(No. 89115.—
(Nos. 89783 & 90053 cons.—

*In re* H.G., a Minor (The People of the State of Illinois, Appellant, v. E.W. *et al.*, Appellees).—*In re* C.S. *et al.*, Minors (The People of the State of Illinois *et al.*, Appellants, v. M.H., Appellee).

*Opinion filed September 20, 2001.*

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for the People.

Paul Holland, of Chicago, for appellee.

Diane L. Redleaf, of Lehrer & Redleaf, and Bruce A. Boyer, all of Chicago, for *amici curiae* National Coalition for Child Protection Reform *et al.*

Patrick T. Murphy and Ron Fritsch, of the Office of the Cook County Public Guardian, of Chicago, for appellant minors.

Joel D. Bertocchi, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, for intervenor-appellant James E. Ryan, Attorney General.

Paul Holland, of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

At issue in this appeal is the constitutionality of section 1(D)(m—1) of the Adoption Act (750 ILCS 50/ 1(D)(m—1) (West 1998)). Section 1(D)(m—1) provides, in part, that a parent may be found unfit if "[p]ursuant to the Juvenile Court Act of 1987, a child has been in foster care for 15 months out of any 22 month period." 750 ILCS 50/1(D)(m—1) (West 1998). The circuit court of

Kane County, in cause No. 89115, and the circuit court of Cook County, in cause Nos. 89783 and 90053, held section 1(D)(m—1) unconstitutional. Direct appeal was taken to this court and the cases were consolidated for review. For the reasons that follow, we affirm the judgment of the circuit court in cause No. 89115. In cause Nos. 89783 and 90053, we dismiss the appeals as moot.

## BACKGROUND

In 1980, Congress enacted the Adoption Assistance and Child Welfare Act (AACWA). See 42 U.S.C. §§ 620 through 628, 670 through 679a (1994). AACWA created a program which authorizes the federal government to reimburse the states for certain expenses incurred by the states in the administration of foster care and adoption services. To be eligible for federal funds under AACWA, the states must have in place a plan which provides, in pertinent part, that "reasonable efforts" will be made to prevent the removal of children from their homes into foster care and, after removal, that "reasonable efforts" will be made to reunify the children with their parents. See 42 U.S.C. § 671(a)(15) (1994); *Suter v. Artist M.*, 503 U.S. 347, 118 L. Ed. 2d 1, 112 S. Ct. 1360 (1992). Through the establishment of the reimbursement program under AACWA, Congress sought to prevent the unnecessary placement of children in foster care. See generally C. Kim, Note, *Putting Reason Back Into the Reasonable Efforts Requirement in Child Abuse and Neglect Cases*, 1999 U. Ill. L. Rev. 287, 314.

Sometime after the passage of AACWA, it became apparent to Congress that the courts and state agencies which were interpreting and implementing the "reasonable efforts" requirement of the Act were placing too great an emphasis on the goals of family preservation and reunification. As a result, a number of children were "languish[ing] in foster care" and "remain[ing] in limbo as to their permanency" while the states attempted to

rehabilitate their parents. 1999 U. Ill. L. Rev. at 293. In response to this and other problems, Congress passed the Adoption and Safe Families Act of 1997. Pub. L. No. 105—89, 111 Stat. 2115 (codified as amended in various sections of 42 U.S.C.).

Among other issues, the Adoption and Safe Families Act of 1997 (ASFA) addressed the question of how long the states must pursue the goal of family reunification under the "reasonable efforts" standard. ASFA mandates that, to retain eligibility for federal funding, and unless certain exceptions apply, the states "shall file a petition to terminate the parental rights of [a] child's parents" when the child "has been in foster care under the responsibility of the State for 15 of the most recent 22 months." 42 U.S.C. § 675(5)(E) (Supp. 1997). The exceptions to this rule requiring the filing of a petition to terminate parental rights are (1) the child is being cared for by a relative, (2) there is no compelling reason for filing such a petition, or (3) the state has not provided services necessary for the safe return of the child to the child's home. 42 U.S.C. § 675(5)(E) (Supp. 1997).

In 1998, the General Assembly responded to Congress' enactment of the 15-month time frame for pursuing family reunification set forth in ASFA by adding section 1(D)(m—1) to the Adoption Act and section 2—13(4.5)(i) to the Juvenile Court Act of 1987 (705 ILCS 405/2—13(4.5)(i) (West 1998)). Section 2—13(4.5) of the Juvenile Court Act simply mirrors the language found in ASFA pertaining to the 15-month period for reunification. Section 2—13(4.5)(i) requires the Department of Children and Family Services to request the State to file a petition to terminate parental rights once a child has spent 15 months out of the most recent 22 months in foster care, unless one of the exceptions to filing such a petition listed in the federal legislation exists. See 705 ILCS 405/2—13(4.5)(i) (West 1998).

Section 1(D)(m—1) of the Adoption Act, however, goes a step further. Section 1(D)(m—1) creates a new ground of parental unfitness based upon the presumption that a parent is unfit if his or her child has been in foster care for 15 months out of a 22-month period. Section 1(D)(m—1) states that a parent may be unfit if:

"Pursuant to the Juvenile Court Act of 1987, a child has been in foster care for 15 months out of any 22 month period *** unless the child's parent can prove by a preponderance of the evidence that it is more likely than not that it will be in the best interests of the child to be returned to the parent within 6 months of the date on which a petition for termination of parental rights is filed under the Juvenile Court Act of 1987. The 15 month time limit is tolled during any period for which there is a court finding that the appointed custodian or guardian failed to make reasonable efforts to reunify the child with his or her family ***." 750 ILCS 50/1(D)(m—1) (West 1998).

### Cause No. 89115

On March 12, 1996, the State filed a petition in the circuit court of Kane County in which it alleged that H.G. was a neglected minor. See 705 ILCS 405/2—3(1), 2—13 (West 1998). The allegations of neglect were contained in two counts, both of which asserted that H.G. was in an environment injurious to her welfare. See 705 ILCS 405/2—3(1)(b) (West 1998). Count I alleged that H.G.'s mother, E.W., had allowed H.G. to have contact with her father, in violation of an order of protection. Count II alleged that E.W. had "grabbed [H.G.'s] arm on two separate occasions causing a dislocation."

Following a temporary custody hearing (see 705 ILCS 405/2—10 (West 1998)), the circuit court determined that H.G. "did receive injuries" to her arm and, thus, that there was probable cause to believe that H.G. was neglected under count II of the State's petition. The court also found that it was "a matter of immediate and urgent necessity" (705 ILCS 405/2—10(2) (West 1998)) that H.G.

be placed in the temporary custody of the Department of Children and Family Services (DCFS).

On October 10, 1996,[1] the circuit court entered an order adjudicating H.G. neglected based upon the allegations set forth in count II of the State's petition. See 705 ILCS 405/2—21 (West 1998).

On December 23, 1996,[2] the circuit court entered a dispositional order making H.G. a ward of the court. The court placed H.G. in the legal custody of DCFS and appointed the guardianship administrator of DCFS her legal guardian. See 705 ILCS 405/2—27(d) (West 1998). At the same time, the circuit court ordered E.W. to cooperate with DCFS and to follow a number of directives, including, *inter alia*, obtaining appropriate housing, participating in therapy, and completing parenting classes.

From December 1996 to August 1998, DCFS continued to monitor E.W.'s progress toward reaching the various goals and objectives that had been established for her. By the end of August 1998, DCFS concluded that E.W.'s progress was unsatisfactory and, therefore, that termination of her parental rights was warranted. On October 13, 1998, the State filed a petition for termination of parental rights. See 705 ILCS 405/2—13, 2—29 (West 1998). In that petition, the State alleged that E.W. was unfit under section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 1994)) because she had failed to make reasonable efforts to correct the conditions which were the basis for removal of H.G. or to make reasonable progress toward the return of the child within 12 months after adjudication. The matter was set for trial on March 11 and 12, 1999.

[1]E.W. waived the statutory, 90-day deadline for adjudication. See 705 ILCS 405/2—14(b) (West 1998).

[2]The statutory, 30-day deadline for setting a dispositional hearing (see 705 ILCS 405/2—21(2) (West 1998)) was waived by agreement.

On March 8, 1999, E.W.'s attorney filed a motion for continuance because an indispensable witness was unavailable for trial. The circuit court granted the motion and continued the trial date until May 24 and 25. On May 17, the guardian *ad litem* for H.G. filed a motion seeking a continuance because he had an oral argument scheduled before the appellate court on May 25. The circuit court granted the motion and continued the case until October 8, 14 and 15. The circuit court chose dates some five months ahead because the court wished to avoid a piecemeal trial and because October 14 and 15 were the first consecutive, open dates on the court's calendar.

On October 4, 1999, the State filed an amended petition to terminate parental rights. In this petition, the State retained its allegation that E.W. was unfit under section 1(D)(m). In addition, for the first time, the State alleged that E.W. was unfit under section 1(D)(m—1) because H.G. had been in foster care for 15 out of the preceding 22 months.

On October 7, 1999, the circuit court vacated the October 8 trial date because a material witness for the State was on medical leave and was unable to appear in court. The court preserved the October 14 and 15 dates and instructed the State to determine whether the witness' testimony could be obtained by deposition. On October 13, 1999, the State filed a motion for continuance, which stated that the witness was physically unable to testify. On October 14, 1999, over E.W.'s objection, the motion for continuance was granted. The case was continued until January 27 and 28 and February 4, 2000. Also on October 14, on the circuit court's motion, the court struck the count in the State's amended petition which alleged that E.W. was unfit under section 1(D)(m—1) because that claim was not yet ripe.

On October 15, 1999, E.W. filed a petition to restore

custody. See 705 ILCS 405/2—28(4) (West 1998). On October 26, 1999, the court ruled that this petition would be heard during the best interest portion of the termination hearing, if the case proceeded to that point.

On January 20, 2000, the State filed a second amended petition to terminate parental rights. This petition repeated the count under section 1(D)(m) that was still pending and added a second count, under section 1(D)(m—1), to replace the one the circuit court had struck in October.

On January 27, 2000, E.W. filed a motion to strike the second count of the State's petition. In this motion, E.W. asserted that section 1(D)(m—1) violates the federal and state constitutional guarantees of substantive due process and equal protection because it "is not narrowly tailored to achieve its manifest purpose, improperly shifts the burden of proof to a respondent parent, and improperly invites consideration of best interest issues at the fitness portion of a termination hearing."

On January 27, 2000, after hearing argument, the circuit court granted E.W.'s motion. In an oral ruling, the court determined that section 1(D)(m—1) implicated a fundamental interest, *i.e.*, parental rights and, therefore, that the statute had to withstand strict scrutiny under the due process clause of the federal and state constitutions. The court held that section 1(D)(m—1) failed this test because it was not narrowly tailored. The court stated,

"The problem is inherent in that this particular statute, unlike all of the other provisions for finding unfitness, relates not to conduct of a parent or an internal flaw of character or behavior or mental illness or physical infirmity, but rather the mere passage of time. I do agree that there is a due process problem."

The circuit court also held that section 1(D)(m—1) was "constitutionally infirm" because it shifted the burden of proof to the parent within the fitness proceeding and

because it introduced the concept of best interests of the child into the determination of the unfitness of the parent.

At the conclusion of the circuit court's ruling from the bench, the State asked the court to stay any further proceedings on the termination petition. The court did so. Thus, count I of the State's petition, which alleges that E.W. is unfit under section 1(D)(m), is still pending, but is in abeyance. The State also sought leave to pursue an interlocutory appeal. The circuit court granted this request and, pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), stated that its holding that section 1(D)(m—1) is unconstitutional warranted interlocutory appeal. The circuit court also found, under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), that there was no just reason for delaying appeal of the court's decision. Appeal was taken by the State directly to this court under Supreme Court Rule 302(a)(1) (134 Ill. 2d R. 302(a)(1)). The State's appeal was docketed as case No. 89115.

In February 2000, the circuit court took evidence on E.W.'s petition to restore custody, which had been filed in October 1999. On March 7, the court determined that H.G. "can be cared for at home (of Mother) without endangering her health or safety." However, the court also concluded that return was not in H.G.'s best interests at that time. Accordingly, the court denied E.W.'s petition.

Cause Nos. 89783 and 90053

M.H. is the mother of C.S. and J.S. On December 12, 1996, the State filed petitions to terminate M.H.'s parental rights with respect to both children. These petitions alleged that M.H. was unfit because she was an habitual drunkard or addicted to drugs (see 750 ILCS 50/1(D)(k) (West 1994)); she failed to make reasonable efforts to correct the conditions which were the basis for her children's removal or failed to make reasonable prog-

ress toward the return of the children (see 750 ILCS 50/1(D)(m) (West 1994)); and she was unable to discharge her parental responsibilities because of mental impairment (see 750 ILCS 50/1(D)(p) (West 1994)). Following a hearing, on August 12, 1998, the circuit court of Cook County ruled that the State had failed to prove by clear and convincing evidence that M.H. was unfit under any of the grounds set forth in the petitions. The State and C.S. and J.S., through the office of the public guardian, appealed the circuit court's decision.

In an opinion issued on December 29, 2000, the appellate court concluded that it could not "agree with the trial court's determination that [M.H.'s] progress was substantial enough to warrant a finding of not unfit" under section 1(D)(m) with respect to either C.S. or J.S. *In re C.S.*, Nos. 1—98—3284, 1—98—3554 cons. (2000) (unpublished order under Supreme Court Rule 23). The appellate court held that the circuit court's determination that M.H. had made reasonable progress toward the return of her children under section 1(D)(m) was against the manifest weight of the evidence. Accordingly, the appellate court reversed the judgments of the circuit court and remanded the cause to determine whether the termination of M.H.'s parental rights would be in the best interests of C.S. and J.S.

On February 2, 2001, M.H. filed in this court a petition for leave to appeal from the appellate court's decision. See 177 Ill. 2d R. 315. On April 4, 2001, that petition was denied.

While the appeal from the circuit court's August 12, 1998, order was pending in the appellate court, the State filed new petitions to terminate M.H.'s parental rights. In these petitions, the State alleged that M.H. was unfit under section 1(D)(m—1) of the Adoption Act because C.S. and J.S. had been in foster care for 15 out of the preceding 22 months. On February 2, 2000, M.H. filed

motions to strike the petitions in which she argued that section 1(D)(m—1) violates the due process clause of the federal and state constitutions.

The Illinois Attorney General was allowed to intervene to defend the constitutionality of section 1(D)(m—1) after being notified of the constitutional challenge. See 134 Ill. 2d R. 19. The Attorney General, the State's Attorney and the public guardian filed responses to M.H.'s motions to strike. On June 7, 2000, the circuit court held that section 1(D)(m—1) is unconstitutional. Accordingly, the circuit court granted M.H.'s motions to strike the State's petitions to terminate her parental rights.

On June 28, 2000, the public guardian filed a notice of direct appeal to this court under Rule 302(a)(1) (providing for direct appeal in cases in which a statute has been held invalid by the circuit court). On the same day, the Attorney General filed a notice of appeal to the appellate court. On August 15, 2000, the Attorney General filed a motion in this court seeking direct appeal pursuant to Supreme Court Rule 302(b) (134 Ill. 2d R. 302(b)) (allowing direct appeal in cases in which the public interest requires expeditious determination). The motion also sought consolidation with the public guardian's appeal, which had been docketed in this court as cause No. 89783. On September 11, 2000, the Attorney General's motion was granted and the case was docketed as No. 90053. Subsequently, on the Attorney General's motion, cause Nos. 89783 and 90053 were consolidated by this court with cause No. 89115.

## ANALYSIS

### Cause No. 89115

At the outset, we clarify the basis of our jurisdiction. In the instant cause, the circuit court of Kane County stated that its holding that section 1(D)(m—1) is unconstitutional warranted interlocutory appeal under

Supreme Court Rule 308 and found, pursuant to Rule 304(a), that there was no just reason for delaying appeal. The State then sought direct appeal in this court under Rule 302(a)(1). Rule 302(a)(1) does not, however, expressly allow for direct appeal to this court from an interlocutory order declaring a statute unconstitutional. *Trent v. Winningham*, 172 Ill. 2d 420, 424 (1996). Rule 302(a)(1) states: "Appeals from *final judgments* of circuit courts shall be taken directly to the Supreme Court (1) in cases in which a statute of the United States or of this State has been held invalid."(Emphasis added.) 134 Ill. 2d R. 302(a)(1).

On at least two occasions this court has assumed jurisdiction over interlocutory orders under Rule 302(a)(1), but in both cases the circumstances were quite different from those presented here. See *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510, 515-16 (1996) (circuit court granted a preliminary injunction preventing the State from enforcing a regulatory statute on the ground that the statute was unconstitutional); *Garcia v. Tully*, 72 Ill. 2d 1 (1978) (circuit court dissolved an injunction under circumstances making it clear the order had the effect of declaring a statute unconstitutional). The State in this cause does not cite to either of these decisions or argue that they control the issue of our jurisdiction here. Nor does the State explain, in any way, how this court may obtain jurisdiction over the circuit court's interlocutory order in the instant cause under Rule 302(a)(1).

However, we need not decide whether jurisdiction exists in this cause under Rule 302(a)(1). As noted previously, we granted the Attorney General's motion seeking discretionary review under Rule 302(b) in cause No. 90053. Rule 302(b) authorizes this court to grant direct appeal in cases in which the public interest requires prompt adjudication. The issue presented in the instant

cause, the constitutionality of section 1(D)(m—1), is identical to that in cause No. 90053 and we discern no basis for concluding that there is any difference in the relative importance of the cases. Accordingly, on our own motion, and consistent with our order granting review in cause No. 90053, we grant the State leave to appeal in cause No. 89115 under Rule 302(b). We now turn to the merits.

Section 1(D)(m—1) creates a presumption of parental unfitness based upon a judicial finding that the parent's child has been in foster care for "15 months out of any 22 month period." 750 ILCS 50/1(D)(m—1) (West 1998). This statutory presumption is based solely upon the time the child has been in foster care; no inquiry is made into the parent's ability to provide the child with good care and treatment. The 15-month period may be tolled "during any period for which there is a court finding that the appointed custodian or guardian failed to make reasonable efforts to reunify the child with his or her family." 750 ILCS 50/1(D)(m—1) (West 1998). Once a court finds that the child has been in foster care for 15 months, the parent may rebut the presumption of unfitness by showing it is more likely than not that it will be in the child's best interests to be returned to the parent within six months from the date the termination petition was filed. 750 ILCS 50/1(D)(m—1) (West 1998).

On appeal, E.W. argues that section 1(D)(m—1) violates the guarantee of substantive due process provided by the United States and Illinois Constitutions. E.W. maintains that section 1(D)(m—1) impinges upon a fundamental liberty interest, the interest a parent has in raising his or her child. Thus, according to E.W., section 1(D)(m—1) must survive strict scrutiny, *i.e.*, it must be narrowly tailored to serve a compelling governmental interest.

E.W. does not dispute that the State has a compelling

interest in protecting the children of Illinois from harm and, hence, that the State has a compelling interest in identifying parents who pose a risk to the safety and well-being of their children and are therefore unfit. However, E.W. contends that section 1(D)(m—1) is not narrowly tailored to achieving this goal. E.W. focuses on section 1(D)(m—1)'s creation of a presumption of unfitness based upon a finding that a child has been in foster care for 15 months. E.W. argues that this statutory presumption does not narrowly identify unfit parents because it defines unfitness based solely on the passage of time rather than parental inability to care for children. Therefore, the statute may declare parents unfit even if they are, in fact, able to safely care for their children. Thus, according to E.W., section 1(D)(m—1) is unconstitutional.

The State, in response, concedes that section 1(D)(m—1) is subject to strict scrutiny. See *In re R.C.*, 195 Ill. 2d 291, 302-04 (2001) (section of Adoption Act defining ground of unfitness is subject to strict scrutiny), citing *Troxel v. Granville*, 530 U.S 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000). The State maintains, however, that section 1(D)(m—1) survives this review. The State emphasizes that it has a compelling governmental interest in protecting the safety and welfare of the children of Illinois. The State asserts that "a fit parent does not allow his or her child to languish in foster care for 15 months" and argues that section 1(D)(m—1) narrowly identifies those parents who pose a danger to the health and safety of their children. We disagree.

To survive strict scrutiny, a statute must be narrowly tailored to serve a compelling interest. A statute is narrowly tailored if it uses "the least restrictive means consistent with the attainment of its goal." *In re R.C.*, 195 Ill. 2d at 303, citing *Tully v. Edgar*, 171 Ill. 2d 297, 304-05 (1996). The presumption of unfitness set forth in

section 1(D)(m—1) is not narrowly tailored to the compelling goal of identifying unfit parents because it fails to account for the fact that, in many cases, the length of a child's stay in foster care has nothing to do with the parent's ability or inability to safely care for the child but, instead, is due to circumstances beyond the parent's control. The record in the instant cause aptly illustrates this point.

On October 13, 1998, the State filed its initial motion to terminate the parental rights of E.W. This petition alleged only that E.W was unfit under section 1(D)(m). No allegation was made that E.W. was unfit under section 1(D)(m—1), and no such allegation could have been made, as the 15-month time period for calculating H.G.'s stay in foster care could not begin to run until the enactment of section 1(D)(m—1), which had only recently occurred. Trial on the State's petition was originally set for March 11 and 12, 1999. On E.W.'s motion, the trial was continued until May 24 and 25 because an indispensable witness was unavailable. The case was continued again because the attorney and guardian *ad litem* for H.G. was required to appear in the appellate court for oral argument on May 25. The trial was then set for dates almost five months later, in October 1999. These dates were not chosen because of anything relating to E.W.'s ability to safely care for H.G. or because of any particular need of H.G. Instead, the October dates were chosen because they were the next available dates on which the circuit court would be able to conduct the trial without interruption.

The October 1999 date was also continued, on the State's motion, because a key witness was medically unable to testify. Only after this final continuance did the 15-month time frame of section 1(D)(m—1) become applicable to this case. On January 20, 2000, the State filed an amended petition to terminate parental rights in

which it alleged that E.W. was unfit under section 1(D)(m—1). Nine of the 15 months covered by the State's allegation of unfitness under section 1(D)(m—1) were directly attributable to continuances which were necessary to bring the case to trial. Further, none of the nine-month period could be tolled under the portion of section 1(D)(m—1) which allows for tolling of the 15-month period because the continuances and court delays had nothing to do with whether "the appointed custodian or guardian failed to make reasonable efforts to reunify the child with his or her family." 750 ILCS 50/1(D)(m—1) (West 1998). Thus, in this cause, the passage of 15 months revealed nothing more than the fact that the judicial system's administrative needs may delay the resolution of certain cases. The fact that H.G. was in foster care for a 15-month period could not, by itself, warrant a presumption that E.W. is an unfit parent.

Other common situations illustrate the illogical reach of the presumption found in section 1(D)(m—1). For example, parents are frequently ordered to undergo drug treatment or other counseling as a condition to regaining custody of a child in foster care. Given the realities of limited funding, it is not uncommon for there to be waiting lists to receive such services. In such cases, DCFS might make every "reasonable effort[ ]" (750 ILCS 50/1(D)(m—1) (West 1998)) to get the parent the appropriate treatment yet be unable to do so in a prompt fashion simply because the program offering the counseling services is full. During the time DCFS attempts to enter the parent in the appropriate program, however, the 15-month period in section 1(D)(m—1) will continue to run. Thus, a delay which occurs through no fault of the parent or DCFS may trigger a finding of unfitness.

Many of the grounds of unfitness set forth in the Adoption Act, other than section 1(D)(m—1), employ time frames of one length or another. See, *e.g.*, 750 ILCS

50/1(D)(c) (West 1998) (desertion for more than three months); 750 ILCS 50/1(D)(k) (West 1998) (habitual drunkenness or addiction to controlled substances for at least one year); 750 ILCS 50/1(D)(l) (West 1998) (failure to demonstrate a reasonable degree of interest in the child's welfare during the first 30 days following the child's birth). However, each of these grounds uses a time frame that measures some form of parental conduct, inaction or inability that relates to competence or the care given to a child. Section 1(D)(m—1), in contrast, improperly measures only the time that a child is in foster care. *Cf. Stanley v. Illinois*, 405 U.S. 645, 657, 31 L. Ed. 2d 551, 562, 92 S. Ct. 1208, 1215 (1972) (under due process of the fourteenth amendment, statutory scheme to determine unfitness may not "foreclose[ ] the determinative issues of competence and care"). Because there will be many cases in which children remain in foster care for the statutory period even when their parents can properly care for them, we conclude that the presumption contained in section 1(D)(m—1) is not a narrowly tailored means of identifying parents who pose a danger to their children's health or safety.

The State emphasizes the importance of the rebuttal allowed by section 1(D)(m—1). The State maintains that, because section 1(D)(m—1) allows a parent to rebut the presumption of unfitness by showing that it will be in the best interests of the child to return home in six months, section 1(D)(m—1) strikes a proper balance between the interests of parents in the care and custody of their children and the interest of the State in protecting the safety of the children.

Citing *Santosky v. Kramer*, 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982), E.W. maintains, however, that it is inappropriate to introduce the concept of best interests during a fitness determination. E.W. further argues that, even if consideration of the best interests

were appropriate during a fitness proceeding, that consideration does not sufficiently narrow the scope of the statute. As E.W. explains: "A parent contesting an allegation of unfitness under section [1(D)(m—1)] could present evidence of her ability to care for her child as part of the best interest phase of the unfitness hearing. The court could credit the parent's evidence as factually true and could rationally conclude that a parent is abundantly fit, i.e., perfectly capable of safely and adequately caring for the child, yet still conclude that the child's best interests will not be served by returning the child to the parent's home. Thus, in its natural operation, section [1(D)(m—1)] compels trial courts to make the Alice-in-Wonderland ruling that a fit parent is, by force of law, unfit."

We agree with the position advanced by E.W. The record in the instant cause illustrates the validity of her argument. While the State's motion to terminate parental rights was pending, E.W. filed a petition to restore custody. See 705 ILCS 405/2—28(4) (West 1998). The court deferred a hearing on that petition and stated that the petition would be considered after any findings of unfitness were made on the termination petition. After the circuit court held section 1(D)(m—1) unconstitutional and the State sought a stay of further proceedings on the termination petition, the court held a hearing on E.W.'s petition to restore custody. After hearing evidence, the court found "[t]hat the Minor can be cared for at home (of Mother) without endangering her health or safety." The court further found that it was not in the best interests of H.G. that the child be restored to the custody of E.W. Accordingly, the court denied the petition.

E.W. established to the circuit court's satisfaction that her child could be safely cared for in her home. However, as of the date of its ruling on the petition to restore custody, the court believed that reunification was

not in the child's best interests. Consequently, had the fitness hearing under section 1(D)(m—1) gone forward, E.W. could have been declared unfit *despite* the court's finding that she was able to safely care for her child. Because this error is built into the statute's design, section 1(D)(m—1) cannot be considered narrowly tailored.

The State also argues that it has a compelling interest in ensuring that the time children spend in foster care is limited and in preventing foster care "drift." The State contends that section 1(D)(m—1) expresses the legislature's desire to obtain a permanent solution for children in foster care in an expeditious manner, regardless of whether that solution is returning the children to their parents or terminating the rights of the parents and making the children available for adoption. According to the State, the goal of achieving permanency is a compelling one that justifies the creation of section 1(D)(m—1). We disagree. The permanency achieved under section 1(D)(m—1) comes only after a finding that a parent is unfit. However, that determination of unfitness, as we have explained, is achieved in a way that is not narrowly tailored, as it must be to survive strict scrutiny. We decline to recognize that the State has a compelling interest in removing children from foster care in an expeditious fashion when that removal is achieved in an unconstitutional manner.

Section 1(D)(m—1) is not narrowly tailored to serve the compelling governmental interest of protecting the safety and well-being of the children of this state. We hold, therefore, that section 1(D)(m—1) violates the substantive due process guarantees of the federal and state constitutions. Accordingly, we affirm the judgment of the circuit court of Kane County.

Cause Nos. 89783 and 90053

As noted previously, petitions to terminate the parental rights of M.H. were first filed in the circuit court

of Cook County in December of 1996, well before the enactment of section 1(D)(m—1). These petitions raised several grounds of unfitness, all of which were rejected by the circuit court. The appellate court, however, reversed the judgment of the circuit court and held that M.H. was unfit under one of the alleged grounds. M.H.'s petition for leave to appeal from that decision was denied by this court in April 2001.

Having denied M.H.'s petition for leave to appeal, the determination that she is unfit has become final. The State has obtained all that it initially sought, *i.e.*, a finding of unfitness. Thus, any decision relating to the constitutionality of section 1(D)(m—1) in the context of the instant causes would be of no consequence. Accordingly, the appeals brought by the Attorney General and public guardian are moot. See, *e.g.*, *In re Adoption of Walgreen*, 186 Ill. 2d 362, 364 (1999). Further, having reached the issue of the constitutionality of section 1(D)(m—1) in cause No. 89115, there is no need to pursue it here. Accordingly, we dismiss the appeals in cause Nos. 89783 and 90053 as moot.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Kane County in cause No. 89115, *In re* H.G., is affirmed. The appeals in cause Nos. 89783, 90053, *In re* C.S. *et al.*, are dismissed.

*No. 89115—Affirmed.*
*Nos. 89783, 90053—Appeals dismissed.*